Daniels, J.
Under the authority created by chapter 628 of the Laws of 1871, the board of the department of public parks in the city of New York, and the major-general commanding the first division of the National guard of the state of New York, selected a parcel of land easterly of Broadway, and bounded in part by the Harlem river, for a parade ground, and in 1873 filed the map mentioned in the act for that purpose. And it was provided by section 2 of the act that from and after the time of the filing of the map the public square or place, and the streets and avenues bounding the same, should become and be one of the public squares or places, and public streets and avenues, in the city of New York, with the same intent and effect as if it had been laid out and established by the commissioners appointed in and by the act entitled an act relative to improvements touching the laying out of streets and roads in the city of New York, and for other purposes, passed April 3, 1807. And it was further provided that the streets and avenues laid out within the limits of the public square, or place so laid out, at the time of the passage of the act, should from thenceforth become abandoned and closed. After the filing of this map proceedings were taken in compliance with the provisions of the act for the acquirement of the title to the property, but they were never completed, but on the other hand they were voluntarily discontinued. That discontinuance was resisted by the persons owning the property proposed to be taken, but their resistance was held to be unavailing, when it was finally considered and passed upon, by the courts. Matter of Department of Public Parks, etc., 48 How., 285.
But after this discontinuance had become effectual, chap. 444 of the Laws of 1877 was enacted, authorizing the appointment of commissioners to determine their claims for damages arising out of the location of this ground for a parade ground, and the subsequent discontinuance of the proceedings. In compliance with the directions contained in this act, three commissioners were appointed to hear and determine the claims made in favor of such claimants. They made several reports which were modified under the direction of the court, and finally set aside upon an appeal from an order of confirmation by the" general term. The rights of the claimants were on the last occasion fully considered and declared by the court. Matter of Munson, 29 Hun, 325.
That decision resulted in a direction to the commissioners *128 to take Such further proofs as might be offered by any of the appellants or by the mayor, aldermen and commonalty of the city of New York, and to estimate and determine thereon the damages, if any, sustained by the several claimants herein, and whereby it was further ordered that in making such estimate and determination, we award and allow to the said several claimants the amount of the depreciation of their several parcels of land between the fifth of April, 1813, and the fifteenth day of June, 1811, first deducting, however, in ascertaining the value thereof on the fifth day of April, 1813, the amount, if any, by which the same had been increased in value by the designation thereof by the public authorities for a military parade ground, and from, the awards so made, deducting the sums heretofore allowed by us for taxes to such parties as have received the amounts so allowed. They proceeded to act under that direction and took further proof to enable them intelligently to do so, and then determined the compensation which should be made to the owners whose property was included within the map of the parade ground and the abutting streets. In their determination they reported that they had complied with the directions contained in the order of the court, and had awarded and allowed to the several claimants the several sums set opposite to their respective names in the said schedule, and have allowed to them the amount of the depreciation of their several parcels of land between the fifth day of April, 1813, and the fifteenth day of June, 1817. first deducting, however, in ascertaining the value thereof on the fifth day of April, 1813, the amount by which the same had been increased in value by the designation thereof by the public authorities for a military parade ground, and deducting also from .the amounts so estimated in favor of such parties as have received the sums heretofore allowed by us for taxes the respective sums so allowed .and received, the names of such parties being set forth in schedule B hereto annexed. In adjusting and determining the sums allowed, the commissioners proceeded upon the fact, which they deemed to be established, that the lands included in the map of the parade ground, had previously been divided into blocks and streets and conveyed to the claimants by deeds describing the lots in such blocks, and bounded upon the designated streets. This course of proceeding was objected to on the part of the city, and the commissioners were urged to consider and assess the claims of the different claimants upon the principle that no streets, or avenues, had been laid out over this ground, and that their compensation should be fixed upon the fact that it was merely farming land, as it then on the surface of the ground appeared to be. And to sustain the appeal it is urged on *129 behalf of the city that the commissioners erred in failing to apply this principle to their estimates of the compensation to be made to the claimants.
But in support of the conclusion adopted by the commissioners and the principle which they applied, it was proved that the commissioners of public parks in the year 1869 made a map including this land, over which streets were proposed to be laid out by them under the authority of chapter 565, of the Laws of 1865, and adopted a resolution approving this map. But as the map was not certified, acknowledged and filed, as the act required that to be done to legally lay out the streets, it was held by the court in Matter of Munson (supra) that the proposed streets and avenues had never become fixed or established so as to constitute any part of the streets or avenues of the city. It further appeared that the Dyckman executors, to whose estate nearly all the land proposed to be taken for the parade ground had previously belonged, themselves made another map upon which they exhibited the same proposed streets and avenues, which appeared on the uncompleted map of the park commissioners, and after making that map they sold nearly all the land subject to their control with reference to the map, and in their deeds bounding the lots sold upon the streets and avenues so exhibited upon the property. This created an easement, in the purchasers by which they were entitled for the use and enjoyment of the lots they respectively purchased, to use so much of the lands as appeared by the maps to be designated for that purpose as streets and avenues. The division of the property and the sale of it in this manner entitled the purchasers to this right of user. This subject and the authorities bearing upon it, was considered in Matter of Sixty-seventh street (60 How., 264), and also in Matter of Eleventh Avenue (31 N. Y., 436), where it was held that purchasers of lots conveyed and bounded in this manner by the common owner, upon proposed streets or avenues were entitled afterwards to the use and enjoyment of such proposed streets and avenues for the convenient use and occupancy of the property purchased by them. While, therefore, so much of the land as was in this manner included within the boundaries of streets and avenues, would not become by what had taken place public streets and avenues of the city, they would still be the streets and avenues of the adjacent property owners as long as they remained unchanged by any action on the part of the public authorities, and would be hable to be appropriated for public use upon the payment of mere nominal compensation. And it was proved as a matter of fact before the commissioners *130 that streets and avenues so laid out were usually adopted afterwards by the public authorities of the city.
But without attributing any particular effect to this latter circumstance, the facts as they have already been stated and were proved resulted in such a division of the property at the time of the sales made by the executors of Dyckman, and which took place in the year 1870, as to divide this land into lots and streets. That was its' condition in point of fact. It had so been laid out by its owners and was purchased in that manner by these claimants, or their grantors, and it so continued in the purchasers and their grantees up to and including the time of the filing of the map under the act of 1871 selecting this land for the purposes of a military parade ground. After that no practical change took place in the condition of the property, but it remained in this manner until the final discontinuance of the proceedings taken to acquire the title to it. And that was also its condition when the act of 1877 was passed, under which these proceedings were taken and have been carried on. It was during this time not owned as farming land, but it was wholly owned as city lots, in blocks, bounded upon and divided by well defined and designated streets and avenues. And it was in that condition of the property and not as mere farming lands when the act of 1877 was passed providing for the allowance of compensation to the owners for the depreciation in value which had taken place during the period the property had been subjected to the restraints of the map filed, describing and designating it as a parade ground. The property of the claimants, as it had been sold and conveyed, had ceased to be mere farming lands, and had in form and effect been made a part of the property of the city to be used and enjoyed only as building lots. It was in that condition that it was acted upon by the act of 1877. And it was to estimate and determine the loss and damage of the persons whose property was included in the proposed parade ground and had been depreciated by the proceedings, that the commissioners of appraisal were to be appointed, and they were thereupon directed by the act to estimate and determine such loss and damage legal, or equitable, if any should be made to appear. And as the property had been taken by the filing of the map after it had been subdivided and sold in this manner, and while it was so owned, and its owners had sustained loss and damage by reason of the restraints imposed upon it by such taking, they were entitled to be considered and compensated by the commissioners on the basis of their interests acquired in this manner, and not as owners of devisable portions of mere farming lands. The commissioners were to take the- *131 property as it had been placed by the parties dealing in it at the time when the proceedings were commenced, and also at the time when they were terminated, and during which it was intended to appropriate the land, to a military parade ground. And that was as lots bounded upon designated streets, which the purchasers had the right to have maintained and continued as such, against the common owners, and not as mere farming lands.
The evidence and rulings of the commissioners, as well as the report made by them, established the fact that they did proceed in" this manner, and that they estimated the loss and injury which the respective claimants had sustained upon this principle. But while they did that they still deducted from their estimates one-fourth or twenty-five per cent of the amount of damages, because of the fact that the streets and avenues laid out upon the property had not been legally opened by the authorities of the city. Their power to do this has been questioned by the counsel appearing for the city. But if they did. not have that authority the city has no reason to complain, for the commissioners might well have declined to exercise it, even if they had it, and refused to have made this deduction from their estimates. If they erred it was an error in favor of the city and against the claimants.
It was proved as a fact that in 1884 the streets through a portion of this property were laid out differently from their designation on the original and unfiled map, and the map under which the property itself was sold by the Dyckman executors. But that circumstance cannot be permitted to affect the rights of the claimants. They were created and arose out of facts, which had transpired when the act of 1877 was enacted. And it was upon those facts as they were then consummated and appeared, that the commissioners were to proceed and make their awards. And in making them under the application of this principle they were clearly within the bounds of the evidence, and probably within that given by Mr. Fairchild, a witness produced and examined on behalf the city.
During the hearing before the commissioners, it was proposed to add the claims of four other persons, who had not up to that time been included in the proceedings, and they were allowed to become parties by the ruling of the commissioners This ruling is assailed as without authority, but the act of 1877 certainly contained nothing withholding from the commissioners the power to permit these persons to become claimants in the proceedings before them. •
It contemplated, on the contrary, that all persons having claims for damages should be permitted to become parties to the proceedings, and to have their claims heard by the *132 commissioners. And it contained no restriction as long as the proceedings were pending, as to the time within which the claimants should be brought in. And as there was no such restriction it was right and equitable that these persons should be allowed to be added as parties. If that had not been done by the ruling of the commissioners they could undoubtedly have secured the same privilege by an application to the court in the proceedings. And as the commissioners did no more than the court would have done upon a proper presentation of this part of the case, their report in favor of these applicants should not be set aside, even if they strictly did not possess the authority they exercised, as long as it was in conformity to what the court would have felt obliged to do upon the facts being presented to it. The act intended that there should b.e a full and complete investigation as to the claims of all persons who had been injured in their rights by this proceeding. And no more than that was accomplished by what the commissioners directed concerning these claimants.
The appeal of Anthony Wallach and others has been no otherwise pressed upon the consideration of the court than by the argument presented on behalf of the city, and it consequently requires no further consideration for the disposition of the case.
As the report was made it conformed to and carried out the direction of the general term, and the spirit and intent of the act of 1877, and the order should be affirmed, with the usual costs and disbursements.
Brady, J., concurs.